## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Ezra Davis

July 1, 1993

Case No. (Criminal) 79585

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This case is before the Court on the defendant's motion to suppress a statement that he made on December 23, 1992, about the location of a pipe later found to contain cocaine residue. For the reasons set forth below, the Court grants the defendant's motion to suppress the statement.

The events giving rise to this motion were testified to by Officer DePugh at oral argument. On December 23, 1992, Ezra Davis was suspected of shoplifting by store personnel and was handcuffed by a store security guard. Officer DePugh arrived on the scene while Davis was handcuffed. After deciding to place Davis under arrest but before placing him under arrest or searching him, and while Davis was still handcuffed, DePugh asked Davis if there were anything on him that DePugh should know about. Davis responded, "I've got a pipe."

The defendant brings this motion to suppress the statement, "I've got a pipe," from admission as evidence at trial, arguing that the statement was obtained in violation of the Fifth Amendment protection against self-incrimination. The Commonwealth agrees that the defendant was not given the warnings specified in *Miranda v. Arizona*, 384 U.S. 436 (1966), before Officer DePugh questioned him. The defendant argues that under the principles of *Miranda* as they are recognized in Virginia cases such as *Blain v. Commonwealth*, 7 Va. App. 10, 371 S.E.2d 838 (1988), when an individual is in custody and is subjected to interrogation, the protections of *Miranda* are triggered, and the warn-

ings against self-incrimination must be given before questioning is permitted.

The Court finds that the facts of this case indicate that the defendant was both in custody and subjected to interrogation. Officer DePugh testified that he had decided to place Davis under arrest before he questioned him, and that he was going to remove the security guard's handcuffs and replace them with police handcuffs. From this evidence, the Court concludes that the police officer's subjective intent was to detain the defendant. From the defendant's perspective as well, while Davis was handcuffed, he could not have believed that he was free to leave the premises.[1] The Court finds that under the facts presented at oral argument, Davis was subjected to a custodial interrogation without *Miranda* warnings.

The Commonwealth argues, however, that under *New York v. Quarles*, 467 U.S. 649 (1984), a suspect need not be given *Miranda* warnings prior to questioning when the questioning is reasonably prompted by a concern for the public safety. In *Quarles*, a young woman reported to police that she had been raped by a black male, six feet tall, wearing a black jacket with the name "Big Ben" printed on the back. She told police that the man had just entered a grocery store and that the man was carrying a gun. Four armed officers entered the store and approached Benjamin Quarles. They apprehended him, frisked him, and handcuffed him. The frisk indicated that he was wearing an empty shoulder holster. Without giving *Miranda* warnings, one officer asked Quarles the location of the gun. He answered, "the gun is over there," indicating some nearby empty cartons. The officers found the loaded gun in the cartons.

The prosecution sought at trial to admit both Quarles' statement and the gun as evidence. On appeal, the United States Supreme Court found that the statement and the gun were admissible despite the absence of *Miranda* warnings. The Court recognized that the police were:

> confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe

---

[1] The Court attaches no significance to the fact that Davis was handcuffed by the store security guard rather than by the police officer. The protection against self-incrimination as safeguarded by *Miranda* clearly does not contemplate that a suspect placed into handcuffs by a non-governmental entity and then questioned by a police officer is not to be afforded *Miranda* warnings merely because the officer did not handcuff him.

the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to public safety: an accomplice might make use of it, a customer or employee might later come upon it. 467 U.S. at 657.

The case presently before the Court demonstrates no imminent threat to public safety as was shown in *Quarles*. Although Officer DePugh testified that safety concerns prompted him to ask Davis if there were anything on him that DePugh should know about, the officer's subjective belief that there was a significant threat to public safety is not the standard articulated by the Supreme Court in *Quarles* as to whether the public safety exception applies. 467 U.S. at 656. The question is whether an officer in these particular circumstances would reasonably conclude that there was such a threat to public safety, thus prompting him to question the suspect. Officer DePugh testified that he asked the question incident to *all* arrests. This Court finds that under the facts of this case Officer DePugh's question to Davis was not reasonably prompted by a concern for public safety. There is no evidence before the Court that the officer had a reason to believe that Davis, handcuffed, possessed a weapon or other instrument capable of harming the public.

The Court therefore grants the motion to suppress Davis' response, "I've got a pipe." The Court makes no ruling on the admissibility of the pipe as evidence, as no motion was before the Court on that issue.